Walter P. Martin, Clerk of the Circuit Court of Henderson County, Illinois for the use of Carrie Walling, Appellee, v. William Sparrow, Appellant.

Gen. No. 8,134.

Heard in this court at the October term, 1929. Opinion filed August 9, 1930.

HARTZELL, CAVANAGH & MARTIN and JAMES W. GORDON, for appellant.

E. V. CHAMPION, CHARLES E. FORT, JR. and CHARLES E. LAUDER, for appellee; FREDERICK H. LAUDER, of counsel.

MR. PRESIDING JUSTICE JETT delivered the opinion of the court.

This suit was instituted by Walter P. Martin, clerk of the circuit court of Henderson county, Illinois, for the use of Carrie Walling, appellee, against William Sparrow, appellant, to recover upon an alleged guaranty hereinafter mentioned. The said appellee claimed

to be the registered owner of Series "A" 7 per cent gold bonds to the amount of $4,640, principal, of the Lomax Town Company and claimed the right to recover upon said guarantee because said bonds had not been paid by the maker thereof.

It appears that in the year 1911, one William T. Love undertook the promotion of a town site enterprise at Lomax in Henderson county, Illinois. The said William T. Love secured options on a large number of tracts of land, secured title to some lands, and operated under the name of "The Lomax Town Company." The Lomax Town Company was merely a name under which William T. Love transacted business. It was the dream of the said Love that the whole area of land to which he had secured title and on which he had taken options should be used to make town sites, build homes, streets, parks, boulevards and factories. In his option contracts he agreed to pay liberal prices for the land.

As was to be expected, he soon needed money. His original proposition was to involve millions of dollars but, in order to get some ready money, he executed a trust deed in which he conveyed the lands he had bought, and his rights under the option contracts, to a trustee. The trust deed was to secure the payment of an issue of $100,000 of gold bonds. The trust deed was recorded and the bonds were printed or engraved, but they found no ready market. It became necessary to bolster them up, so another financial idea was conceived. Love undertook to induce those who had given options on their land to guarantee the payment of the bonds to the extent of $10 for each acre the several landowners had optioned. He succeeded in getting a number of them to execute written guaranties.

Among this number was William Sparrow, the appellant. He had optioned 630 acres of land, and executed two separate guaranties, one for $300, and the other for $6,000.

Love was unable to get guaranties to the extent of $100,000 and, after receiving about $40,000 of such instruments, he forwarded them to the trustee, who undertook to sell the bonds on the faith of the guaranty. Among the prospective purchasers of the bonds was Carrie Walling. She called on the trustee, and he exhibited the written guaranties which he had in his possession. Mrs. Walling afterwards purchased $4,640 of the bonds, but no written guaranty was delivered to her. Time went on, the trust deed was foreclosed, and only a small part of the indebtedness was realized. The decree directed a distribution. Mrs. Walling refused to accept her part, and brought suit directly against Sparrow on his instruments of guaranty. A trial was had which resulted in a judgment in her favor against Sparrow for $6,300.

The instruments executed by Sparrow and sued on in this case are alike except as to amount, and are in these words:

"Bond Guarantee. Series 'A' 7 per cent Gold Bonds of The Lomax Town Company of Lomax, Illinois.

"To THE HOLDER AND OWNER OF THIS AGREEMENT:

"THIS IS TO CERTIFY, That I am the owner of 600 acres of land located in Henderson County, Illinois, its actual cash value, over and above all incumbrance, being $100 per acre; and I hereby guarantee to any holder of this instrument the payment of any of the Five Year 7 Per Cent Gold Bonds of the Lomax Town Company, known as Series 'A' Bonds, bearing date of February 1st, 1912, owned or held by the holder of this instrument, to the extent or sum of ($6,000).

"It is understood that all assets of said Company, real and personal, shall first be exhausted, to make payment of said bonds, before recourse shall be had upon this obligation.

"The purpose of this agreement is to add value to the said bonds and create a market for them, and

thus strengthen the Town Building Enterprise of the Lomax Town Company.

"William Sparrow (seal)"

The question in this case is whether there is any liability in favor of the plaintiff growing out of the guaranty contracts sued on. It will be noted that they were addressed "to the holder and owner of this agreement." By their terms they guarantee to "the holder of this instrument" the payment of any of said bonds to the extent of the amount named therein. As above stated one of Sparrow's contracts called for $6,000, and the other for $300. It is evident that it was no joint agreement entered into between guarantors. Their undertakings were individual and several. At the time they were executed and delivered to Love, Sparrow only engaged himself to the purchaser of bonds who held a guaranty. It is therefore obvious that if a purchaser of bonds had selected Sparrow's guaranties, no other bondholder would be authorized to look to such guaranties for protection. Only the one who held them had any rights under them. Mrs. Walling had neither of Sparrow's guaranties in her possession. After she had sustained the loss she had no more right to sue on Sparrow's guaranty than she had to sue on any of the other guaranties which Love had obtained. Neither had she any more right to sue Sparrow than any other losing bondholder had.

The law applicable to all contracts, including those of suretyship and guaranty, is well stated in Corpus Juris, vol. 13, page 279:

"The offerer has a right to prescribe in his offer any conditions as to time, place, quantity, mode of acceptance, or other matters which it may please him to insert in, and make a part thereof, and the acceptance, to conclude the agreement, must, in every respect, meet and correspond with the offer, neither falling short of, or going beyond the terms proposed, but ex-

actly meeting them at all points and closing with them just as they stand.''

In vol. 28 Corpus Juris, page 899, the following is announced:

''The acceptance of a guaranty must be made upon the same terms in which it is offered, including the performance of conditions prescribed therein.''

It is urged that contracts of guarantee must be construed as favorably to the creditor as other contracts and a number of cases are cited and considerable argument indulged in to establish that proposition. We believe this to be the result of a misapprehension.

This is not a case calling for construction or interpretation. The language of the instruments sued on leaves no room for construction. It is clear and explicit, subject to convey but one meaning.

When the plaintiff traded for the bonds, she says, she relied implicitly upon these guarantees. If she did, she should have possessed herself of them for, until she became the holder of the instrument, there was no privity of contract between her and the signer, and then only in the event that she was the holder or owner of some of the bonds described therein.

The most that can be said of this writing is that it is an offer to guarantee the payment of any of these bonds to anyone who held or owned them and desired to rely upon the guaranty, if they would possess themselves of the writing, for, until such possession is taken, the contract is not complete. There is no meeting of the minds of the parties. The meeting of the minds is just as essential in this kind of a contract as in any other kind. *Ruffner v. Love,* 33 Ill. App. 601–605. To the same effect see *Taylor v. Tolman Co.,* 47 Ill. App. 264; *Sears v. Swift & Co.,* 66 Ill. App. 496.

By the very terms of this writing, its acceptance can be manifested only by possessing it. If everyone who bought some of these bonds needed only to say ''he relied implicitly upon the guarantees'' of Mr.

Sparrow, he could easily be involved in many lawsuits, and each person who bought a bond and saw his writing would have an equal right to sue him and an equal right to recover against him.

The question of delivery is discussed in the briefs, but is not important in this case on this record. The delivery required by the terms of the guarantee is a delivery to the holder or owner of some of the bonds described therein. We do not find anything in the record on which to base a finding that these writings were ever in the possession of any bondholder, much less that Mrs. Walling ever possessed either of them.

The motion to strike the bill of exceptions, having been duly considered, is denied, and for the reasons above set forth, the judgment is reversed, and the cause remanded.

*Reversed and remanded.*